IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM BELL,

        Petitioner,

   v.

ROB PERSSON,

        Respondent.

Case No. 6:12-cv-02367-ST

FINDINGS AND RECOMMENDATIONS

Robert R. Rainwater
Rainwater Law Group
1430 Willamette Street, Suite 492
Eugene, Oregon 97401-4049

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the validity of his state court convictions for Unlawful Use of a Weapon with a Firearm and Felon in Possession of a Firearm. For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied.

## BACKGROUND

On the morning of June 17, 2007, petitioner and his friend, Nathainal Smith, traveled to the home of petitioner's cousin, Willie Sims. Sims was home with his girlfriend, Monique Rodriguez, and Kevin Smith (also petitioner's cousin). Sims and petitioner began talking, and the conversation soon turned into a heated argument. When Rodriguez and Sims told petitioner to leave, petitioner pulled a gun from his waistband and pointed it at Rodriguez, Sims, and Kevin Smith. Petitioner "started pulling on the trigger and racking the slide as he kept pointing it at [Sims] and Kevin [Smith]," but petitioner was having difficulty because his right arm was in a cast and the gun did not fire. Respondent's Exhibit 115, pp. 3, 24, 31-32. Sims locked himself in his apartment, leaving petitioner and Kevin Smith on the outside. Sims did so "before [petitioner] could get a shot off at him." *Id* at 32. Sims told police that he stood to the north side of the door so petitioner could not shoot him through the door. *Id.*

2 - FINDINGS AND RECOMMENDATIONS

During the confrontation, Sims' neighbor, Eugene Robinson, opened his door to see what the commotion was about. Petitioner pointed his gun at Robinson, telling him he did not intend any disrespect. *Id* at 35-36. Robinson closed the door and, a moment later, heard a single shot fired. Petitioner had finally fired the gun and lodged a bullet in the ceiling. Petitioner and Nathainal Smith then fled the scene by car. When police apprehended petitioner, they found the weapon that fired the bullet in the car, but petitioner insisted he had not been at Sims' apartment. *Id* at 26.

Petitioner was charged with four counts of Unlawful Use of a Weapon, three counts of Attempted Murder, and one count of Felon in Possession of a Firearm. Respondent's Exhibit 102, pp. 6-7. On the day set for trial, petitioner asked the court to provide him with substitute counsel. Petitioner asserted that although he had been in custody for four months, his appointed counsel had only begun investigating his case three days earlier. Respondent's Exhibit 104, pp. 18-19. After exploring petitioner's issues with counsel and taking testimony from counsel's investigator regarding the scope of the his investigation, the court indicated its willingness to provide him with a different attorney, but also expressed reservations about doing so:

> Court:   I'm trying to find out what really is behind your lack of trust for Mr. Coran and if there's anything I can do to cure that by appointing a different lawyer.

3 - FINDINGS AND RECOMMENDATIONS

>           Another lawyer will still be appointed by
>           the Court if, apparently that's what you
>           want. If I do that, what's to say you
>           won't distrust that person also? How can
>           I hope to improve this situation by
>           appointing a different lawyer?
>
> Pet'r:    I don't know.

Respondent's Exhibit 104, pp. 48-49.

The court then asked petitioner whether it might be helpful to speak with someone in his family for advice. When petitioner indicated that he would like to speak with his mother, the trial judge cleared the courtroom and allowed petitioner and his mother to speak about his representation and whether to proceed to trial or accept a plea offer from the State. *Id* at 52. During the recess, petitioner spoke with his mother, conferred with his appointed counsel, and decided to accept the plea offer from the State. *Id* at 53-54.

Pursuant to the plea offer, petitioner: (1) pled guilty to four counts of Unlawful Use of a Weapon and one count of Felon in Possession of a Firearm; and (2) stipulated to upward durational departure sentences on all counts for a total of 290 months in prison with credit for time served and the opportunity for good-time credits. Respondent's Exhibit 103. In exchange, the State dropped the Attempted Murder charges.

Petitioner's sentencing immediately followed the entry of his plea. During the sentencing, the court gave the victims an opportunity to make statements. Sims made a lengthy statement that

4 - FINDINGS AND RECOMMENDATIONS

the sentence imposed was excessive and that he did not believe petitioner was trying to kill anyone. Respondent's Exhibit 104, pp. 57-64. The court explained to Sims that if it were to disregard the plea agreement as he urged, it would be required to start a jury trial where petitioner would be at risk of receiving a 1,300-month sentence. *Id* at 64.

Petitioner did not file a direct appeal, but did file for post-conviction relief ("PCR") in Marion County. Among his other claims, petitioner alleged that trial counsel was constitutionally ineffective when he failed to: (1) provide petitioner with adequate advice regarding the charges against him; and (2) ensure that petitioner's entry of his guilty plea was knowing, voluntary, and intelligent. Respondent's Exhibit 106, pp. 3-4. Petitioner presented affidavits from Nathainal Smith, Robinson, Kevin Smith, and Sims to support his position. Respondent's Exhibit 107. The affidavits generally stand for the proposition that because petitioner did not attempt to kill anyone, his sentence was excessive. The PCR trial court denied relief, stating as follows:

> 1. Petitioner's four affidavits of witnesses are not persuasive. Three of the witnesses have significant bias favoring Petitioner, as well as impeachment issues, and the fourth witness does not assist the Petitioner's case.
>
> Kevin Smith and Willie Sims are the cousins of Petitioner and both are angry about the length of sentence given to Petitioner in the case. Kevin Smith and Willie Sims would also be impeached by their detailed statements to the police the night of the crime and by the

5 - FINDINGS AND RECOMMENDATIONS

> testimony of Monique Rodriguez. Kevin Smith's and Willie Sims' affidavits are not credible after reviewing all the evidence.
>
> Nathaniel [*sic*] Smith went with Petitioner to confront the victims the night of the crime. Nathaniel [*sic*] Smith has bias favoring the Petitioner and is angry about the length of sentence given to Petitioner in the case. Nathaniel [*sic*] Smith's affidavit conflicts with his statements given to the police the night of the crime and would be impeached by the testimony of Monique Rodriguez. Nathaniel [*sic*] Smith's affidavit in not credible after reviewing all the evidence.
>
> Eugene Robinson lives in an apartment next door to Willie Sims. Eugene Robinson saw the Petitioner with a gun outside the apartment of Willie Sims. At that time, the Petitioner pointed the gun at Eugene Robinson and ordered him to get back inside his apartment. Eugene Robinson's affidavit stated a few seconds later a shot was fired in the ceiling from the area where the Petitioner had been standing. Eugene Robinson testified at grand jury, and his testimony, as well as his affidavit, established a factual and legal basis for Petitioner's plea of guilty for one count of Unlawful Use of a Weapon with a Firearm. Eugene Robinson's affidavit does not provide a defense for Petitioner and the affidavit is consistent with other evidence.
>
> 2. The statements of Monique Rodriguez to the police on the night of the crime, along with her sworn testimony to the Marion County Grand Jury, established a legal and factual basis for all the charges filed against the Petitioner. The statement of Ms. Rodriguez was not modified in this proceeding and it provided a sufficient basis for a jury to convict Petitioner of the three Attempted Aggravated Murder with a Firearm charges, as well as the charges to which Petitioner voluntarily pled guilty and for which he was sentenced pursuant to his plea agreement.

6 - FINDINGS AND RECOMMENDATIONS

> 3. Petitioner's trial counsel discussed the Petitioner's plea extensively on the record in the presence of Petitioner. Persuasive testimony was provided by Petitioner's trial investigator of his efforts to investigate the State's case against Petitioner. Petitioner's trial counsel, in the face of the admissible evidence against Petitioner and considering Petitioner's aggravated criminal record, reasonably believed that dismissal of the three Attempted Aggravated Murder charges, the removal of Ballot Measure 11 mandatory sentences, and the availability of "good time credits" for Petitioner were material and substantial benefits for the Petitioner in sentencing which justified a plea agreement by the Petitioner rather than a jury trial with probable Ballot Measure 11 sentencing for a much longer time and without "good time credits".
>
> 4. Petitioner was allowed additional time to orally discuss all of these issues with family members prior to conversing with the trial judge about the plea agreement. Petitioner then knowingly and voluntarily waived all his rights to trial and pled guilty pursuant to the previously discussed plea agreement. Petitioner did not attempt to withdraw his guilty plea when, prior to imposition of sentence, Willie Sims complained that the proposed sentence was too long and unfair.

Respondent's Exhibit 119.

Petitioner appealed the PCR trial court's decision. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Bell v. Kilmer*, 250 Or. App. 570, 284 P.3d 599, *rev. denied*, 352 Or. 564, 291 P.3d 736 (2012).

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on December 31, 2012, alleging 11 grounds for relief. However,

7 - FINDINGS AND RECOMMENDATIONS

petitioner submits argument on only two of those claims. Specifically, petitioner argues that trial counsel was ineffective when he failed to investigate or prepare his case such that petitioner did not: (1) receive advice from competent and effective counsel upon which he could properly make a knowing and intelligent plea; and (2) because he did not receive such advice, petitioner felt coerced to accept the plea agreement offered by the State. Respondent asks the court to deny relief on those claims because the PCR trial court's decision denying them is neither contrary to, nor an unreasonable application of, clearly established federal law.

## **FINDINGS**

### I.  **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable.[1]  *Id* at 409.

## II. Unargued Claims

As previously noted, petitioner raises 11 claims in his Amended Petition. In his supporting memorandum, however, petitioner argues only two claims of ineffective assistance of

---

[1] Although petitioner argues that the court should not lend deference to the PCR trial court's decision as to the issue of counsel's performance, the PCR trial court rendered a lengthy reasoned decision on the claims argued here to which this court is required to lend deference. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (even where there is no reasoned decision, federal habeas courts still lend deference to the state court's ultimate decision).

9 - FINDINGS AND RECOMMENDATIONS

counsel. As to the remaining claims, he neither argues the merits nor addresses respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they are procedurally defaulted.

### III. **Argued Claims**

According to petitioner, his trial attorney was ineffective when he failed to properly investigate his case, causing petitioner to enter a guilty plea that was not knowing and voluntary. Specifically, he claims that an adequate investigation would have shown that he could not have been found guilty of Attempted Murder as to any of the victims, rendering the State's concessions within the plea bargain essentially meaningless.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S.

668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced his defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 123.

Petitioner claims that had his counsel conducted a proper investigation, he would have more fully and accurately advised about the strength of the charges against him. He argues this was made evident in his PCR trial when he was able to produce affidavits from Kevin Smith, Nathainal Smith, Sims, and Robinson which generally show that he had not attempted to kill anyone. However, as previously noted, the PCR trial court made a

11 - FINDINGS AND RECOMMENDATIONS

credibility determination adverse to these affidavits.  This credibility determination is binding on this court absent clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (state court credibility determinations are entitled to a presumption of correctness).

Recognizing that the PCR trial court's credibility finding is critical to his case, petitioner challenges that finding on a number of grounds.  First, petitioner claims that the June 17 incident was prompted by an argument he had with Sims the previous day, and that the three witnesses to the earlier argument (Sharika Bell, Steve Bell, and Annie Land) could have provided helpful testimony on the issue of the credibility of the witnesses who were present during the June 17 incident.  The record reveals, however, that during the substitution of counsel hearing, petitioner's counsel advised the court that the testimony of these individuals "would be neither helpful nor admissible."[2]  Respondent's Exhibit 104, pp. 24, 28.  In addition, none of these witnesses testified at petitioner's PCR trial.  Therefore, the PCR trial court cannot be faulted for not considering non-existent impeachment evidence.

---

[2] Sharika Bell and Annie Bell did appear to testify during the substitution of counsel hearing, but only to indicate that they were willing to speak with the defense investigator. Respondent's Exhibit 104, pp. 27-28.

12 - FINDINGS AND RECOMMENDATIONS

Petitioner also claims that the PCR trial court unreasonably determined that Sims and Kevin Smith were angry, and relied upon that improper finding as part of the basis upon which to make a credibility determination adverse to their affidavits. It is clear from the transcript of petitioner's sentencing proceeding that Sims was, indeed, angry. He went on at length about the impropriety of petitioner's sentence and even became somewhat argumentative with the trial judge. Respondent's Exhibit 104, pp. 57-66. While Kevin Smith did not speak at petitioner's sentencing, he later characterized petitioner's sentence as unfair and "out of line." Respondent's Exhibit 107 (Affidavit of Kevin Smith). Based upon this record, petitioner has not refuted the PCR trial court's factual finding by clear and convincing evidence.

Petitioner next takes issue with the PCR trial court's decision to credit the unsworn statements by Sims and Kevin Smith to the police on the night of the June 17 incident over the later sworn statements in their affidavits. He believes it is inherently unreasonable to credit a person's unsworn statements over that same person's sworn testimony. However, the statements at issue were separated by a period of over two years, and the PCR trial court based its decision upon the belief that the witnesses had changed their statements in reaction to what they believed was an excessive sentence imposed upon a family member. As a result, the PCR trial

court's resolution of the conflict between these statements was not unreasonable.

Petitioner also asserts that the PCR trial court impermissibly inferred that Nathainal Smith was biased toward petitioner based only on the fact that the two of them traveled together to Sims' apartment. Where the two men traveled to Sims' apartment as a continuation of an altercation from the day before, and they both attempted to kick Sims' door open (Respondent's Exhibit 115, p.32), the inference that Nathainal Smith was biased in petitioner's favor is a reasonable one. Similarly, the finding that Nathainal Smith was "angry" about petitioner's lengthy sentence is supported by his deposition in which he stated that "the sentence imposed was extremely excessive." While this is not necessarily strong evidence of anger, petitioner has not shown clear and convincing evidence to counter the PCR trial court's factual finding.

Petitioner also posits that Robinson's affidavit clearly helps to establish that petitioner did not commit the crime of attempted murder. Specifically, he maintains that where Robinson attested that petitioner pointed a weapon at him and did not intend to murder him, a jury could surmise that it was not Attempted Murder for petitioner to point a weapon at other people.

Robinson's affidavit reveals that he did not witness the actions leading to the Attempted Murder charges. He opened his door, petitioner pointed a gun at him and told him to close the

14 - FINDINGS AND RECOMMENDATIONS

door, and Robinson complied.  Immediately afterward, Robinson heard a shot fired, followed by the sound of footsteps running down the stairs to the ground floor.  Respondent's Exhibit 107 (Robinson Affidavit).  While he claimed that there was not enough time for anyone to be shot, he did not witness the earlier events where petitioner pointed and attempted to fire his gun at Kevin Smith, Sims, and Rodriguez.

Finally, petitioner faults the PCR trial court for relying, in part, on the grand jury testimony of Rodriguez to impeach the affidavit testimony of Sims and Kevin Smith.  Petitioner initially argued that Rodriguez did not appear before the Marion County Grand Jury, but now concedes that she did, in fact, appear as a witness in that proceeding.  He nevertheless asserts that her testimony was not available to the PCR trial court for its review.  There is no indication that the PCR trial court was unable to review Rodriguez's grand jury testimony.[3]  Thus, petitioner has not established that the PCR trial court did not review and rely upon Rodriguez's grand jury testimony.  Nevertheless, the PCR trial court also explicitly relied upon Rodriguez's statements to the police from the June 17 incident.  For all of these reasons,

---

[3] The PCR trial court explicitly relied not only on Rodriguez's grand jury testimony, but also on that of Robinson. Respondent's Exhibit 119.  It is difficult to see how the PCR trial judge lacked access to the grand jury testimony he repeatedly referenced.  This is especially true where petitioner's assertion to the contrary is unsubstantiated.

15 - FINDINGS AND RECOMMENDATIONS

petitioner fails to present clear and convincing evidence sufficient to refute the PCR trial court's credibility determination.

Given the PCR trial court's credibility determination, petitioner did not demonstrate that additional investigation would have yielded anything materially helpful to his case. Consequently, his counsel's performance did not fall below an objective standard of reasonableness.  Similarly, where the evidence supported the charges of Attempted Murder, where petitioner could not have realistically testified in his own defense given his serious criminal history, and where he faced the possibility of a 1,300-month sentence, it is unlikely that he would have foregone the plea offer had counsel performed additional investigation in his case.[4]  Consequently, the PCR trial court's decision denying relief on these ineffective assistance of counsel claims did not involve an unreasonable determination of the facts in light of the evidence presented, nor does it constitute an unreasonable application of clearly established federal law.

///

///

---

[4] As the PCR trial court noted, even after Sims appeared at petitioner's sentence and indicated that he felt petitioner's sentence was excessive on the basis that petitioner had not attempted to kill him, petitioner did not attempt to change the plea he had entered only minutes prior to Sims' statements. Respondent's Exhibit 119, p. 2.

16 - FINDINGS AND RECOMMENDATIONS

**IV.   Evidentiary Hearing**

As an alternative to granting habeas corpus relief, petitioner asks the court to hold an evidentiary hearing should it harbor reservations concerning disputed factual issues. This court harbors no such reservations. In any event, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id* at 1400. Accordingly, petitioner's request for an evidentiary hearing should be denied.

## RECOMMENDATIONS

For the reasons set forth above, petitioner's request for an evidentiary hearing should be denied, the Petition for Writ of Habeas Corpus (docket #1) should be denied, and a judgment should be entered dismissing this case with prejudice. The court should, however, issue a Certificate of Appealability as to petitioner's argued claims on the basis that he has made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

///

**SCHEDULING ORDER**

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due April 18, 2014. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 1st day of April, 2014.

                        S/   Janice M. Stewart
                        Janice M. Stewart
                        United States Magistrate Judge